UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUAN RIVERA,

                        Plaintiff,

        -against-

UNITED STATES OF AMERICA,

                        Defendant.

25-cv-1979 (AS)

17-cr-151 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Juan Rivera petitions the Court to vacate his sentence under 28 U.S.C. § 2255. For the following reasons, the petition is DENIED.

## BACKGROUND

The Court summarizes the circumstances of Rivera's convictions here based on the thorough discussion in Judge Nathan's opinion denying Rivera's post-trial motions. *See United States v. Pizarro*, 2019 WL 3406603, at *1–4 (S.D.N.Y. July 29, 2019).

On September 26, 2018, a jury convicted Juan Rivera and Robert Pizarro on multiple counts for their involvement in the kidnapping, robbery, and murder of a federal cooperating witness, Robert Bishun. Bishun, who owned an autobody shop, had been a heroin dealer and became a federal informant after he was arrested in 2012.

On September 20, 2016, Rivera and Pizarro entered the shop and attempted to rob Bishun. While Bishun was bound with zip ties, Bishun told Rivera and Pizarro that he was a federal informant. Rivera and Pizarro took Bishun away from the shop, driving away in Pizarro's Yukon and Bishun's BMW. They then strangled Bishun to death with a zip tie. Bishun was found dead inside his BMW in the Riverdale section of the Bronx with a zip tie around his neck.

In the S4 indictment filed on April 25, 2018, Rivera and Pizarro were charged with (i) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c) ("Count One"); (ii) kidnapping resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1) and 2 ("Count Two"); (iii) murder of a witness to prevent that witness from reporting a federal offense, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and (2) ("Count Three"); (iv) Hobbs Acts robbery conspiracy and attempted Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2 ("Count Four" and "Count Five," respectively); and (v) using, carrying, possessing, and brandishing firearms in furtherance of crimes of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2 ("Count Six").[1] No. 17-cr-151, Dkt. 82.

---

[1] Pizarro separately was charged with three other counts related to a 2015 robbery of Bishun.

Trial began on September 11, 2018, and lasted approximately three weeks. Rivera and Pizarro put on a combined defense. Their theory was that a man named Gabriel Guillen, a drug dealer, was the real killer. Guillen had purportedly confessed to a confidential informant that he had murdered Bishun at the request of a corrupt NYPD officer, Merlin Alston, to prevent Bishun from cooperating against Alston. In support of this theory, defense counsel introduced two text messages and a recording of a conversation between Guillen and the confidential informant, purporting to show that Guillen confessed to the murder. The government rebutted the defense's case by introducing news articles that predated the text messages and recording to establish that all the information in them about the murder was publicly known.

After the jury found Rivera and Pizarro guilty on all counts, they submitted a combined Rule 29 motion. Defendants then requested a change of counsel, which Judge Nathan granted. After new counsel appeared, each defendant filed a separate supplemental Rule 33 motion. Judge Nathan denied all of these motions on July 29, 2019. *Pizarro*, 2019 WL 3406603, at *13.

On July 30, 2019, Judge Nathan sentenced Rivera and Pizarro in separate proceedings. Rivera was sentenced to a term of incarceration of 40 years on Count One, life imprisonment on Count Two, life imprisonment on Count Three, 20 years on Count Four, 20 years on Count Five, and seven years on Count Six. No. 17-cr-151, Dkt. 369 at 3.

Rivera appealed to the Second Circuit, arguing that the government's late disclosure of *Brady* material warranted dismissal of the indictment. *See United States v. Pizarro*, 2023 WL 3332539, at *1 (2d Cir. May 10, 2023). He also challenged the sufficiency of the evidence on Counts One through Three. *Id.* at *2. The Second Circuit rejected both arguments, holding that there was sufficient evidence to convict Rivera, and that Rivera and Pizarro had not suffered any prejudice based on the government's late disclosures. *Id.* The Second Circuit denied rehearing on December 6, 2023, and Rivera did not file a petition for certiorari, so Rivera's conviction became final on March 5, 2024. *See Clay v. United States*, 537 U.S. 522, 528 (2003) ("Finality [for post-conviction review] attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").

On March 4, 2025, Rivera filed a letter requesting an extension of time to file a petition under 28 U.S.C. § 2255. Dkt. 1.[2] Because the letter stated substantive grounds for relief, the Court construed it as a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and directed Rivera to file an amended petition by June 30, 2025. Dkt. 4; *see also Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) ("Where a motion, nominally seeking an extension of time, contains allegations sufficient to support a claim under section 2255, a district court is empowered, and in some instances may be required, . . . to treat that motion as a substantive motion for relief under section 2255."). Rivera filed an amended petition on June 17, 2025. Dkt. 5. The United States filed a response in opposition on December 19, 2025. Dkt. 16. Rivera has also sought the appointment of counsel. Dkt. 15.

---

[2] Docket citations without a case number refer to entries in 25-cv-1979.

## LEGAL STANDARDS

Under 28 U.S.C. § 2255, a prisoner in federal custody can move the court that imposed the sentence to vacate, set aside or correct the sentence. *See* 28 U.S.C. § 2255(a). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)).

## DISCUSSION

### I.    The Court declines to appoint counsel for Rivera

Rivera has moved for court-appointed counsel. Dkt. 15. The Court may appoint counsel for a defendant seeking relief under 28 U.S.C. § 2255 if it "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B). The Court declines to appoint counsel in this case. As discussed below, the claims Rivera raises either are meritless or would not affect his sentence. As a result, the interests of justice do not require the appointment of counsel in this case.

### II.    The motion to vacate is denied

Rivera raises several arguments in his motion. Most are procedurally barred or fail on the merits, and the Court declines to review one under the concurrent-sentence doctrine.

A defendant's claims in habeas are typically procedurally barred if he failed to raise the claims on direct review. *Bousley v. United States*, 523 U.S. 614, 622 (1998). To avoid the procedural bar, the defendant must show either cause and prejudice or actual innocence. *Id.* Rivera does not make any cognizable argument for actual innocence, and the only argument for cause and prejudice that the Court can glean from his motion is a claim of ineffective assistance of counsel. The Court considers potential claims for ineffective assistance of counsel even where the claims might otherwise be procedurally barred.

#### A.  Rivera's *Brady* argument fails

First, Rivera argues that he was subject to "an overzealous prosecution where [exculpatory] evidence . . . was withheld from trial to gain an unlawful conviction." Dkt. 1 at 3; *accord* Dkt. 5 at 2 (citing a "Brady Violation"), 6–10 (including a New York Times article about the *Brady* claim in the case).[3] In general, the government is required to turn over material exculpatory evidence to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963), and the government in the criminal case conceded that it produced *Brady* material in an untimely fashion. But Rivera advanced the *Brady* argument on direct appeal, and it was rejected by the Second Circuit. *See Pizarro*, 2023 WL

---

[3] Although Rivera's amended petition does not explicitly raise a *Brady* claim, the Court construes his petition as challenging his conviction under *Brady* given his various references to *Brady* in the initial motion for an extension of time and amended petition.

3332539, at *1 (holding that Rivera "fail[ed] to demonstrate any prejudice from the government's belated disclosures"). "A § 2255 motion may not relitigate issues that were raised and considered on direct appeal." *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). As a result, this argument fails.

### B.  Rivera's argument based on a failure to call witnesses fails

Second, Rivera argues that he is entitled to habeas relief because the defense was "not allowed to call" several people as witnesses. Dkt. 5 at 5. Rivera claims that he was prevented from calling "Guillen," the "C.I[.] who reported the confession," and "law enforcement officers that were involved with that investigation." *Id.*

All three groups of people appear to tie back to the alleged confession by Gabriel Guillen. The defense introduced a recording and two text messages at trial that they alleged established that Guillen, a drug dealer, had confessed to the murder. Dkt. 16 at 10. Lawyers representing Guillen and the confidential informant advised Rivera's counsel that if called to testify, they would invoke their Fifth Amendment right against self-incrimination. *Id.* at 30. Both witnesses were deemed unavailable and certain hearsay evidence was allowed into the record as a result. *Id.* The government argued in rebuttal that Guillen's statements showed that he only knew information about the murder that had been publicly reported. *Id.* at 10.

With respect to the "law enforcement officers" that Rivera mentions, he does not specify which law enforcement officials that he was prevented from calling, nor does he explain why he could not call them. With respect to Guillen and the confidential informant, the Court construes these arguments first to suggest that Rivera was claiming that his counsel was ineffective for failing to call the witnesses in question, and second to suggest that his attorneys were precluded from calling the witnesses. Both arguments lack merit.

#### 1.  *Rivera's claims about failing to call law enforcement officers fail*

Starting with the "law enforcement officers" that Rivera claims that he was unable to call, this claim fails in several respects. First, it is procedurally barred for failure to raise it on direct appeal. But even if it were not, Rivera does not explain which law enforcement officers he wanted to call nor does he suggest what they might have said to support his case. He does not present any evidence as to why he believes these unnamed officers would have favorable testimony. He does not explain why or how he was prevented from calling them. And from the record, it is not clear to the Court that he was prevented from calling any law enforcement officials. This claim therefore fails, and while it isn't expressly raised, any ineffectiveness claim based on the same allegations would fail largely for the same reasons.

#### 2.  *Rivera's counsel was not ineffective for failing to call Guillen or the confidential informant*

Moving next to Guillen and the confidential informant, the Court finds that to the extent Rivera's claim is construed as arguing that his counsel was ineffective for failing to call the two

4

witnesses, it fails. "To prove th[e] [Sixth Amendment] right [to effective assistance of counsel] has been violated, a defendant must show (1) the attorney's representation 'fell below an objective standard of reasonableness,' and (2) there was 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Rosemond*, 958 F.3d 111, 121 (2d Cir. 2020) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). As the Court explained when denying a similar motion from Pizarro, "[t]he decision not to call a particular witness is typically a question of trial strategy that [reviewing] courts are ill-suited to second-guess." *Pizarro v. United States*, 2025 WL 1409386, at \*6 (S.D.N.Y. May 15, 2025) (quoting *United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998)).

The Court can't say that "there is no strategic or tactical justification for" trial counsel's decision not to call Guillen or the confidential informant. *Id.* Further, the government has explained that it stipulated to the entry into evidence of several pieces of otherwise inadmissible hearsay statements relating to Guillen on the understanding that Guillen and the confidential informant would invoke their Fifth Amendment rights if called to testify. *See* Dkt. 16 at 30. And as the Court notes below, if asked to permit Rivera to call the two witnesses, the trial court may have had good reason to say no.

### 3. *Any claim that the trial court precluded Rivera from calling witnesses would fail*

To the extent that Rivera is arguing that he was precluded by the trial court from calling Guillen or the confidential informant, he does not state a claim for relief. For one, the claim is procedurally barred, as he failed to raise the claim on direct appeal. And second, Rivera has not pointed to any evidence suggesting that the trial court ever made an express decision to preclude either witness.

But even if there were evidence and the claim were not procedurally barred, it would fail. Both Guillen and the confidential informant refused to testify citing their Fifth Amendment right against self-incrimination, leading the trial court to deem them unavailable for the purposes of Federal Rule of Evidence 804 and allowing the defense to introduce statements that would have otherwise been inadmissible as hearsay. Dkt. 16 at 30. And while it didn't happen, the trial court could have been justified in prohibiting Rivera from calling the witnesses, since a criminal defendant has no right to call a witness whom he knows will refuse to testify under the Fifth Amendment. *E.g.*, *United States v. Klinger*, 128 F.3d 705, 709 (9th Cir. 1997); *United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983). So the claim would fail on the merits.

### C.  Counsel was not ineffective in failing to "remind" jurors of certain facts

Third, Rivera argues that his trial counsel provided ineffective assistance by failing to "to inform and remind jurors" of testimony that Rivera had a made a phone call on the night of the crime at 8:02 PM. *See* Dkt. 5 at 31. Rivera says that if the jury had been reminded of this testimony, they would have concluded that surveillance footage from around that time did not depict Rivera, because the person on the video did not make a call. Rivera also argues that his lawyers should have

introduced evidence "to remind jurors" that Rivera is a white Hispanic man, while the two men on the video were Black. *See id.* These arguments cannot support an ineffective-assistance claim.

It is not clear when Rivera thinks that his attorneys should have "remind[ed]" jurors of those facts. Given the use of the word "remind," the Court construes Rivera as arguing that his counsel should have focused on those facts during closing arguments. But "closing arguments are ordinarily a matter of trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel." *United States v. Feng Ling Liu*, 2015 WL 4460898, at *23 (S.D.N.Y. July 20, 2015) (quotation omitted), *aff'd sub nom. United States v. Bandrich*, 636 F. App'x 65 (2d Cir. 2016). And Rivera does not explain why any omission was so egregious to support an ineffective assistance claim, especially since Rivera's counsel did, for example, call out the apparent difference in race in the security footage during her opening statement. Dkt. 16 at 42.

### D. Counsel was not ineffective for failing to look at discovery

Fourth, Rivera argues that his counsel was ineffective because they "failed to look at discovery and surveillance videos." Dkt. 5 at 30. But Rivera points to no evidence suggesting that his attorneys failed to look at discovery or the surveillance videos. And as the government notes, Rivera's attorneys actively questioned witnesses about the surveillance footage and other discovery, Dkt. 16 at 40, which strongly suggests that they did review them.

### E. Rivera's challenge to the interstate-commerce element fails

Fifth, Rivera argues that the interstate-commerce element required on Count Two was not met because his phone bill does not show that he received the call that formed the basis for this element. Dkt. 5 at 42. This argument also fails. The argument is procedurally barred for failure to raise it on direct appeal. And no ineffective assistance of counsel claim could be brought to evade the procedural bar, given that Rivera's counsel actively raised nontrivial challenges to the interstate commerce element at trial. *See* Dkt. 16 at 45–46. And after the conviction, Judge Nathan explicitly held that there was sufficient evidence to conclude that Rivera had received the call in question. *Id.* at 46.

### F. The Court declines to review Rivera's challenge to the "crime of violence" element under the concurrent-sentences doctrine

Finally, Rivera challenges his conviction on Count Six, which makes it a crime to carry a firearm in connection with a crime of violence. Rivera argues that the predicate for Count Six—attempted Hobbs Act robbery—isn't a crime of violence under the statute. The Court declines to review the validity of Rivera's conviction on Count Six. The concurrent-sentence doctrine allows courts to "decline to review the merits of a claim on collateral review when the challenged conviction's sentence runs consecutively to one or more unchallenged life sentences." *Al-'Owhali v. United States*, 36 F.4th 461, 463 (2d Cir. 2022). "The doctrine is a 'rule of judicial convenience,'" which allows courts to "conserve[] judicial resources when, 'regardless of the outcome, the prisoner will remain in jail for the same length of time.'" *Id.* at 466 (first quoting *Kassir v. United States*, 3 F.4th 556, 561 (2d Cir. 2021); and then quoting *Benton v. Maryland*, 395 U.S. 784, 799

(1969) (White, J., concurring)). Courts have "discretion to apply the doctrine when . . . (1) the collateral challenge will have no effect on the time the prisoner must remain in custody and (2) the unreviewed conviction will not yield additional adverse collateral consequences." *Id.* at 467.

Both are true here. Rivera is currently serving two concurrent life sentences for murder and kidnapping that resulted in death. Vacatur of Count Six, which carries a seven-year sentence that runs consecutively to these life sentences, would "have no effect on the time he must serve in prison." *Id.* Additionally, "there is 'no meaningful possibility' that the unreviewed conviction will subject [Rivera] to a 'substantial risk of adverse collateral consequences,'" given that Rivera's "life sentences are all without parole"; "it is unlikely that [Rivera] will be subject to a 'recidivist statute for a future offense'" since he's "already in prison for life,"; it "is unlikely" the conviction could be used to impeach him at a future trial for the same reason; and a firearms conviction is "unlikely to subject [him] to a 'societal stigma,'" especially in comparison to his conviction for murder. *Id.* at 468 (quoting *Kassir*, 3 F.4th at 568).

### G.  No ineffective assistance of appellate counsel claim would be successful

Although Rivera does not explicitly argue that his counsel was ineffective on appeal, he repeatedly emphasizes the fact that his counsel raised only the *Brady* claim on appeal. Given Rivera's pro se status, the Court will construe those references as an argument that his counsel was ineffective on appeal for failing to raise many of the issues that are procedurally barred. But this, too, would fail.

The Supreme Court has noted that "appellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). To that end, Rivera has not shown that his counsel's decision to focus on the *Brady* claim on appeal rendered counsel ineffective, rather than merely being the product of a strategic decision to focus on what counsel believed to be the strongest argument. Prevailing on the *Brady* claim could have resulted in the dismissal of the main charges in the case—those carrying life sentences. That was a reasonable, even if ultimately unsuccessful, strategy. As a result, Rivera has not shown that his counsel was ineffective for failing to raise other arguments on appeal.

### III.  No Certificate of Appealability Will Issue

Under 28 U.S.C. § 2253(c)(1)(B), "an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255" unless a judge issues a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). "The standard for issuing the certificate of appealability is whether 'jurists of reason would find it debatable whether the petition states a valid claim.'" *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (quoting *Slack v. McDaniel*, 529 U.S. 473, 478 (2000)). The Court declines to issue a certificate of appealability because Rivera hasn't made a substantial showing of the denial of a constitutional right.

Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

## CONCLUSION

For these reasons, Rivera's motion is DENIED.

The Clerk of Court is respectfully directed to terminate the motions at 17-cr-151, Dkt. 513 and 25-cv-1979, Dkt. 15, enter judgment in 25-cv-1979, and close both cases.

SO ORDERED.

Dated: April 29, 2026
New York, New York

ARUN SUBRAMANIAN
United States District Judge

8